IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 7:19-CV-409 |
| 6.10 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; YOLANDA HERNANDEZ, *ET AL*. | § § § § § § | |
| *Defendants.* | § § | |

**AMICUS RESPONSE BRIEF REGARDING OWNERSHIP OF SUBJECT PROPERTY**

Pursuant to the Court's request at the October 14, 2020 title hearing, the UNITED STATES OF AMERICA (hereinafter "Plaintiff") in its role as *amicus curiae* submits the following brief regarding ownership of the subject property in response to "Defendants Ventura Brewster Flores, Amalia Brewster Sanchez, Rose Brewster Dillard, Louisa Brewster Gallardo, and Jamie Lanay Brewster's Brief in Support of Ownership of the Subject Property." While the United States takes no formal position regarding the interests of potential claimants, the United States believes that resolution of title ownership is necessary before just compensation may be determined and awarded.

**I.   PROCEDURAL HISTORY**

1. On December 11, 2019, Plaintiff filed a Declaration of Taking[1] and Complaint in Condemnation[2] for a fee simple interest in 6.10 acres of land, more or less, located in Hidalgo

---

[1] Dkt. No. 2.
[2] Dkt. No. 1.

County, Texas, identified as Tract RGV-WSL-4004 (hereinafter referred to as the "Subject Property"). The interest and property are more particularly described at Schedules "C", "D", and "E" of the Declaration of Taking.[3]

2. On December 17, 2019, Plaintiff deposited $25,010.00 into the Registry of the Court as estimated just compensation for the fee taking of the Subject Property.[4] Pursuant to 40 U.S.C. § 3114(b)(1), the filing and the deposit immediately vested title to the Subject Property in the United States.

3. On February 5, 2020, the Court issued a Rule 16 Scheduling Order[5] setting deadlines in this case.

4. On August 21, 2020, Plaintiff and Defendants Ventura Brewster Flores, Amalia Brewster Sanchez, Rose Brewster Dillard, Louisa Brewster Gallardo, and Jamie Lanay Brewster (hereinafter "Defendants") jointly moved for an extension of the Court's scheduling order deadlines and requested the Court schedule a title hearing.[6]

5. On September 16, 2020, the Court issued an Amended Rule 16 Scheduling Order[7] modifying the deadlines in this case, and an Order Setting Title Hearing[8] scheduling a title hearing for October 14, 2020 at 10:00 a.m.

6. On October 8, 2020, Plaintiff filed an Amicus Brief Regarding Ownership of the Subject Property[9] in order to assist the Court in resolving title ownership so that just compensation could be determined and awarded.

---

[3] *See* Dkt. No. 2-1.
[4] Dkt. No. 6.
[5] Dkt. No. 98.
[6] Dkt. No. 121.
[7] Dkt. No. 122.
[8] Dkt. No. 123.
[9] Dkt. No. 125.

7. On October 14, 2020, prior to the title hearing, Defendants filed their Brief in Support of Ownership of the Subject Property[10] disagreeing with Plaintiff's understanding of ownership of the Subject Property, and asserting that they recognize the owners of the Subject Property to be only the heirs of Clemencia Jackson de Brewster based on Section 16.0265 of the Texas Civil Practice and Remedies Code, which is a 15-year adverse possession statute that allows adverse possession of property by cotenant heirs.

8. At the title hearing on October 14, 2020, Plaintiff and Defendants informed the Court that they had conferred regarding the title issues in this case, and requested that the Court determine title based on briefs. The Court subsequently requested Plaintiff file a responsive brief addressing the adverse possession issue raised by Defendants by November 4, 2020, and provided that the Defendants could file a sur-reply by November 12, 2020.

9. Accordingly, Plaintiff now submits the following responsive brief in its role as *amicus curiae* to assist the Court in resolving the title issues in this case.

## II.   STATEMENT OF FACTS

### A.  *Summary of Title*

10. As discussed in Plaintiff's amicus brief, title to the Subject Property runs from an Agreement of Partition recorded November 18, 1914 in the Hidalgo County Deed Records,[11] wherein Leonardo Jackson acquired his interest in the Subject Property.[12]

---

[10] Dkt. No. 127.
[11] *See* Ex. 1 – Agreement of Partition, Doc. No. 1914-90000154, Recorded November 18, 1914, Deed Records of Hidalgo County, Texas.
[12] *Id.*

11. Leonardo Jackson died intestate on April 6, 1924,[13] and his interest in the Subject Property was divided equally among his nine children,[14] subject to a 1/3 life estate interest held by his spouse, Antonia Hernandez Jackson.[15]

12. At the time of Leonardo Jackson's death, his nine children were as follows: Apolonio Jackson, Daniel Jackson, Fernando Jackson, Leonardo Jackson, Jr., Santiago Jackson, Isabel Jackson Sanchez, Andrea Jackson Handy, Josefa Jackson Olbera, and Clemencia Jackson Brewster.[16]

13. On July 24, 1937, Leonardo Jackson's surviving wife and nine children together granted and signed a perpetual easement granting the County of Hidalgo access to the Subject Property for purposes of "constructing, operating, and maintaining suitable levees[.]"[17] Hidalgo County subsequently conveyed the easement to the United States of America on October 5, 1937.[18]

14. On July 29, 1952, following a series of transactions, Andrea Jackson de Munoz, Clemencia Jackson Brewster, Isabel Jackson Sanchez, Daniel Jackson, Sr., Apolonio Jackson, Sr., Leonardo Jackson, Jr., Josefa Jackson Olvera, and W.E. Richey partitioned all of Portion 1 of the Rachel Webber Tract of the El Gato Grant via Partition Deed[19] but they specifically excluded the 6.10 acre Subject Property as they were apparently under the mistaken belief that they had sold in fee the 6.10 acre Subject Property when they granted the perpetual easement over the Subject Property

---

[13] Ex. 2 - Aff. of J.P. Bowie, Doc. No. 1937-8805, Recorded October 5, 1937, Deed Records of Hidalgo County, Texas.

[14] As inherited property, each of the nine children's interest in the Subject Property was their separate property. Tex. Family Code § 3.001(2).

[15] Tex. Prob. Code § 38(b)(1). Antonia Hernandez Jackson was his second wife.

[16] *See* Ex. 2, *supra* note 13.

[17] Ex. 3 - Levee Easement, Doc. No. 1937-8801, Recorded October 5, 1937, Deed Records of Hidalgo County, Texas.

[18] *See* Ex. 4 - Easement Deed, Doc. No. 1937-8800, Recorded October 5, 1937, Deed Records of Hidalgo County, Texas.

[19] Ex. 5 - Partition Deed, Doc. No. 1953-10745, Recorded July 9, 1953, Deed Records of Hidalgo County, Texas; *see* Ex. 6 – Affidavit and Map of Proposed Partition, Doc. No. 1964-10984, Recorded June 22, 1964, Deed Records of Hidalgo County, Texas.

to Hidalgo County, which was subsequently transferred to the United States for construction of the levee. Because of this mistaken belief, they failed to specifically account for the Subject Property in any later surveys, partitions, or conveyances.

15. At the time of the 1952 partition, the percentage[20] of ownership interests in the Subject Property were as follows:

    (A) Andrea Jackson de Munoz,
        as separate property        .212931035 (49.4/232)

    (B) Apolonio Jackson a/k/a
        Apolonio Jackson, Sr.,
        as separate property        .169827586 (39.4/232)

    (C) Daniel Jackson a/k/a
        Daniel Jackson, Sr.,
        as separate property        .148275862 (34.4/232)

    (D) Ysabel Jackson de Sanchez a/k/a
        Isabel Jackson a/k/a
        Isabel Sanchez,
        as separate property        .148275862 (34.4/232)

    (E) Clemencia Jackson Brewster,
        as separate property        .148275862 (34.4/232)

    (F) Josefa Jackson Ponce a/k/a
        Josefa Jackson Olvera
        as separate property        .080818966 (18.75/232)

    (G) W. E. Richey        . 043103448 (10/232)

    (H) Fernando Jackson,
        as separate property        .016163793 (3.75/232)

    (I) Leonardo Jackson, Jr.,
        as separate property        .016163793 (3.75/232)

    (J) Santiago Jackson,
        as separate property        .016163793 (3.75/232)

---

[20] The ownership interests are identified in percentages rather than fractions for ease of division.

        Total:        1.00000000 (232/232)

16. After the 1952 partition, Fernando Jackson and Santiago Jackson each deeded their entire right, title, and interest they inherited from their mother, Antonia Jackson Hernandez, which included their interest in the Subject Property, to their brother Leonardo Jackson, Jr.[21] Leonardo Jackson, Jr.'s interest in the Subject Property therefore increased to .048491379 (11.25/232).

17. Thereafter, the Subject Property was never specifically accounted for in later surveys, partitions, or conveyances, and it remained an asset shared equally by all of Leonardo Jackson's original heirs and W.E. Richey; and as each died; the share amounts became smaller but continued to be conveyed by will or intestacy as detailed previously throughout Plaintiff's Amicus Brief Regarding Ownership of the Subject Property.[22]

### B. *Clemencia Jackson Brewster's Interest*

18. As is relevant to this response brief, Clemencia Jackson Brewster was *one* of Leonardo Jackson's original heirs who inherited an interest in the Subject Property and subsequently owned an undivided .148275862 (34.4/232) interest in the Subject Property following the 1952 partition.

19. Clemencia Jackson Brewster's estate was probated in Hidalgo County Cause No. 26,706-C[23] following her death on March 10, 1989. Her will provided that all of her "property and estate, real and personal or mixed" be divided in eight equal portions among each of her seven surviving children,[24] and the heirs of her predeceased son, James J. Brewster. Following the probate of her estate, each of Clemencia Jackson Brewster's seven surviving children and the heirs of her son,

---

[21] Ex. 7 - Quitclaim Deed, Doc. ID 1955-7133, Recorded April 18, 1955, Deed Records of Hidalgo County, Texas; Ex. 8 - Quitclaim Deed, Doc. ID 1955-11081, Recorded June 21, 1955, Deed Records of Hidalgo County, Texas. The Subject Property is not specifically referred to in either of these documents.
[22] *See* Dkt. No. 125.
[23] Ex. 9 – Last Will and Testament of Clemencia Jackson de Brewster, Doc. No. 1997-571907, Recorded Jan. 9, 1997, Deed Records of Hidalgo County, Texas.
[24] *See id*. The surviving children of Clemencia Jackson Brewster were: Samuel J. Brewster, George "Jorge" Brewster, Ventura Brewster Flores, Amalia Brewster Sanchez, Rose Brewster Dillard, Louisa Brewster Gallardo, and Jamie Lanay Brewster (f/k/a Luis Brewster, Jr.).

James J. Brewster, received an equal share of her interest in the Subject Property, amounting to a .018534483 undivided interest.

20. Defendants continue to hold their own .018534483 undivided interest in the Subject Property, and the .018534483 undivided interest that would have been held by Samuel Jackson Brewster, James J. Brewster, and George "Jorge" Brewster, Sr. has been divided amongst their heirs as detailed previously in Plaintiff's Amicus Brief Regarding Ownership of the Subject Property.[25]

### III. ISSUE TO BE DECIDED

21. The only issues before the Court are the determination of (1) the identification of the parties entitled to just compensation for the taking of the Subject Property, and (2) the amount of just compensation to be paid for the property. In order to assist the Court in determining the first of these issues, Plaintiff now addresses the issue of whether Section 16.0265 of the Texas Civil Practice and Remedies Code applies in this case, as Defendants have asserted that they meet the requirements of this statute to establish adverse possession by cotenant heirs.[26]

### IV. LEGAL STANDARD

22. Defendants assert that they meet all requirements to establish adverse possession as cotenant heirs under Section 16.0265 of the Texas Civil Practice & Remedies Code.[27]

**A.** *Federal Law in Condemnation Cases*

23. It is well-established that federal courts sitting in condemnation cases are authorized to determine who among competing claimants held title to land prior to its condemnation.[28] Courts

---

[25] *See* Dkt. No. 125 ¶¶ 36-40.
[26] Dkt. No. 127.
[27] *Id*. at ¶ 7.
[28] *United States v. 22,680 Acres of Land in Kleberg Cty., Tex.*, 438 F.2d 75, 77 (5th Cir. 1971); *Clark v. White*, 185 F.2d 528, 530 (5th Cir. 1950); *see* FRCP 71.1(h); *United States v. Reynolds*, 397 U.S. 14, 19-20, (1970) (explaining that "except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented...").

should resolve title issues as a preliminary matter, prior to granting just compensation.[29] Where more than one party claims ownership of land, the burden is on the claimant to establish his or her right to the property in question.[30]

24. In determining title, federal courts look to the substantive law of the state in which the property is located to determine a party's interest in land.[31] While the United States is expected to aid the Court in its determination of title to land prior to condemnation, the United States takes no advocacy position regarding title matters in its role as *amicus curiae*.[32]

**B.** *Texas Civil Practice & Remedies Code § 16.0265*

25. Under Texas law, cotenant heirs may acquire the interest of other cotenant heirs in real property by adverse possession if they meet the requirements of Section 16.0265 of the Texas Civil Practice & Remedies Code. This statute provides a 15-year combined limitations period in order for cotenant heirs to adversely possess the real property of other cotenant heirs.[33] A cotenant heir is "one of two or more persons who simultaneously acquire identical, undivided ownership interests in, and rights to possession of, the same real property" under Texas law "or a successor in interest of one of those persons."[34]

26. In order to initiate a claim of adverse possession against cotenant heirs under Section 16.0265, the cotenant heirs claiming adverse possession *must*:

    a. File an affidavit of heirship *and* affidavit of adverse possession[35] in the deed records of the county in which the real property is located;

---

[29] *Atomic Fuel Co.*, 383 F.2d at 3.
[30] *See United States v. Lee*, 360 F.2d 449, 452 (5th Cir. 1966); *United States v. Certain Land in the Village of Highgate Springs*, 413 F.2d 128 (2nd Cir. 1969).
[31] *See United States ex. Rel. T.V.A. v. Powelson*, 319 U.S. 266, 279 (1943).
[32] *See United States v. Certain Lands in Town of Hempstead*, 129 F.2d 918, 920 (2d Cir. 1942); *see also* Fed. R. Civ. P. 71.1 advisory committee's notes to 1951 edition, not to Subdivision 1.
[33] Tex. Civ. Prac. & Rem. Code § 16.0265.
[34] *Id*. at § 16.0265(a).
[35] The affidavit of adverse possession *must* include:

    b. Publish notice of the claim of adverse possession "in a newspaper of general circulation in the county" where the real property is located "for the four consecutive weeks immediately following the date" the affidavit of heirship and affidavit of adverse possession are filed; and

    c. Provide written notice of the claim of adverse possession "to the last known addresses of all other cotenant heirs by certified mail, return receipt requested."[36]

27. Additionally, the cotenant heirs claiming adverse possession under Section 16.0265 must show that "for a continuous, uninterrupted 10-year period immediately preceding the filing of" an affidavit of heirship and affidavit of adverse possession as required by Subsection (c), the possessing cotenant heirs (1) peaceably and exclusively held possession of the property; (2) cultivated, used, or enjoyed the property; and (3) paid all property taxes not later than two years after the date the taxes became due.[37] The adverse possessing cotenant heirs must additionally show that during this 10-year period, no other cotenant heir has:

    (A) contributed to the property's taxes or maintenance

    (B) challenged a possessing cotenant heir's exclusive possession of the property;

---

(1) a legal description of the property that is the subject of the adverse possession;
(2) an attestation that each affiant is a cotenant heir of the property who has been in peaceable and exclusive possession of the property for a continuous, uninterrupted period during the 10 years preceding the filing of the affidavit;
(3) an attestation of cultivation, use, or enjoyment of the property by each affiant during the 10 years preceding the filing of the affidavit;
(4) evidence of payment by the affiant or affiants of all property taxes on the property . . . during the 10 years preceding the filing of the affidavit; and
(5) an attestation that there has been no action described in Subsection (b)(2) by another cotenant heir during the 10 years preceding the filing of the affidavit.

*Id*. at § 16.0265(d) (emphasis added)
[36] *Id*. at § 16.0265(c).
[37] *Id*. at § 16.0265(b)(1).

  (C) asserted any other claim against a possessing cotenant heir in connection with the property;

  (D) acted to preserve the cotenant heir's interest in the property by filing notice of the cotenant heir's claimed interest in the deed records of the county in which the property is located; or

  (E) entered into a written agreement with the possessing cotenant heir under which the possessing cotenant heir is allowed to possess the property but the other cotenant heir does not forfeit that heir's ownership interest.[38]

28. If the above requirements are met, and the adverse possessing cotenant heirs have filed the affidavits as required in Subsection (c), the other cotenant heirs have 5 years from the date of filing of the affidavits during which time they "must file a controverting affidavit or bring suit to recover the cotenant heirs interest in real property adversely possessed," or "title vests in the adversely possessing cotenant heir or heirs."[39]

## V. ANALYSIS

29. Although Plaintiff takes no advocacy position regarding ownership of the Subject Property, it offers the following analysis regarding whether Section 16.0265 of the Texas Civil Practice & Remedies Code is applicable in this case in its role as *amicus curiae* to assist the Court in determining this issue.

**A.** *Cotenant Heirs*

30. Defendants assert that they are cotenant heirs because they inherited an interest in the Subject Property from their mother, Clemencia Jackson Brewster.[40]

---

[38] *Id*. at § 16.0265(b)(2).
[39] *Id*. § 16.0265(e)-(f).
[40] Dkt. No. 127 at ¶ 8.

31. Defendants' mother is Clemencia Jackson Brewster. She and her eight other siblings originally inherited their interest in the Subject Property when their father, Leonardo Jackson, died intestate on April 6, 1924. Clemencia Jackson Brewster then died testate on March 10, 1989, and her will divided her interest in the Subject Property into eight equal portions among each of her seven surviving children and the heirs of her predeceased son, James J. Brewster.[41] Defendants make up five out of the seven children who had survived Clemencia Jackson Brewster.

32. Upon the death of Leonardo Jackson, Clemencia Jackson Brewster was a cotenant heir of the Subject Property because she simultaneously acquired an "identical, undivided ownership interest[] in, and rights to possession of" the Subject Property with her eight other siblings.[42] Clemencia Jackson Brewster subsequently passed away, leaving her interest in the Subject Property to Defendants, her other two surviving children who have since passed away, and the heirs of her predeceased son, James J. Brewster.

33. As successors in interest to Clemencia Jackson Brewster's interest in the Subject Property, Defendants and the heirs of their three deceased siblings appear to be cotenant heirs within the meaning of Subsection 16.0265(a).[43]

**B.** *Initiating Adverse Possession Under Section 16.0265*

34. Defendants next acknowledge that neither they, nor any of the other heirs previously identified by Plaintiff, have met the requirements to initiate adverse possession under Section 16.0265.[44] Defendants contend that they have not initiated this action because "questions or

---

[41] *See* Ex. 9, *supra* note 23.
[42] *See* Tex. Prob. Code § 38(b)(1).
[43] Tex. Civ. Prac. & Rem. Code § 16.0265(a).
[44] Dkt. No. 127 ¶¶ 24-25.

discussions regarding ownership of the [S]ubject [P]roperty arose after the filing of the present suit."[45]

35. Subsection (c) of Section 16.0265 specifically states that "[t]o make a claim of adverse possession against a cotenant heir," the cotenant heirs "claiming adverse possession *must*" meet its requirements.[46] The requirements of Subsection (c) appear to be intended to provide notice to other cotenant heirs of the adversely possessing cotenant heirs' claim of adverse possession against the property. Without this notice, the other cotenant heirs are not be presented with the opportunity to dispute the claim of adverse possession.

36. While Defendants recognize that Subsection (c) is an affirmative step which initiates a claim of adverse possession by cotenant heirs, they acknowledge that none of the requirements were initiated here.[47] Rather, they contend that their actions in this condemnation action mirror the steps of Subsection (c) and therefore meet the requirements of the statute.[48] Defendants have not shown, however, that they have taken any affirmative steps prior to or after the filing of this action to comply with the requirements of Subsection (c). They have not shown that they filed an affidavit of heirship and affidavit of adverse possession in the deed records of Hidalgo County, Texas, where the Subject Property is located.[49] They also have not shown that they published their adverse possession claim in a newspaper of general circulation in Hidalgo County, Texas or provided written notice of their claim of adverse possession to all other cotenant heirs.[50] Although the other landowners named in this action are aware of the condemnation action, it does not appear any of them are aware of Defendants' claim of adverse possession. Additionally, it does not appear they

---

[45] *Id*. at ¶ 24.
[46] Tex. Civ. Prac. & Rem. Code § 16.0265(c) (emphasis added).
[47] Dkt. No. 127 ¶¶ 25, 28.
[48] *Id*. at ¶ 28.
[49] Tex. Civ. Prac. & Rem. Code § 16.0265(c)(1).
[50] *Id*. at § 16.0265(c)(2)-(3).

were notified of this claim through Defendants' brief, as the brief was only served on counsel of record and the other landowners are all *pro se*.[51]

37. Because Defendants have not shown that they meet any of the requirements to initiate a claim of adverse possession by cotenant heirs under Section 16.0265, it does not appear that this statute would apply in this case to support a claim of adverse possession.[52]

### C. *Ten Years Preceding Initiation of Adverse Possession Under Section 16.0265*

38. Defendants next contend that they have met all substantive requirements of Subsection 16.0265(b) to support a claim of adverse possession as cotenant heirs.[53] Although Defendants do not appear to meet the required elements to initiate a claim of adverse possession by cotenant heirs under Subsection (c), Plaintiff proceeds to analyze the elements of Subsection (b) to assist the Court.

39. Once a claim of adverse possession by cotenant heirs is initiated by meeting the requirements of Subsection (c), the adversely possessing cotenant heirs must show action on their part and inaction on the part of the other cotenant heirs "for a continuous, uninterrupted 10-year period" prior to the filing of the affidavits required by Subsection (c).[54]

    a. *Requirements for Adversely Possessing Cotenant Heirs*

40. Defendants assert that they meet all requirements of Subsection 16.0265(b)(1) to support a claim of adverse possession as cotenant heirs.[55]

41. As noted above, Subsection 16.0265(b)(1) requires that "for a continuous, uninterrupted 10-year period" preceding the filing of the affidavits required in Subsection (c), adversely

---

[51] *See* Dkt. 127, Certificate of Service.
[52] *See Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006) (citing *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985)) (finding that adverse possession requires "visible appropriation; mistaken beliefs about ownership do not transfer title until someone acts on them.").
[53] Dkt. No. 127 ¶ 12.
[54] Tex. Civ. Prac. & Rem. Code § 16.0265(b).
[55] Dkt. No. 127 ¶ 12.

possessing cotenant heirs (1) peaceably and exclusively hold possession of the property; (2) cultivate, use, or enjoy the property; and (3) pay all property taxes not later than two years after the date the taxes became due.[56]

42. Defendants first contend that they have held the Subject Property in peaceable and exclusive possession for decades as inheritance from their mother because they use it to access their homes and they have not been questioned by any other cotenant heir about their exclusive possession of the Subject Property.[57] As Defendants acknowledge, the Subject Property consists mostly of the International Boundary and Water Commission ("IBWC") levee.[58] It is well-known that the levee is used by U.S. Border Patrol agents in their efforts to secure the border, and landowners living in the area have acknowledged their use of the levee throughout negotiations with Plaintiff. While Defendants appear to contend that they have held peaceable and exclusive possession of the Subject Property because they use it as a driveway, that would not appear to be sufficient to support a claim of adverse possession as they have not shown that their use is exclusive, nor have they shown any additional action taken by them on the Subject Property establishing peaceable and exclusive possession.[59]

43. Defendants next assert that they have used and enjoyed the Subject Property because they have used the lands north and south of the Subject Property "for as long as they can remember" and they use the levee on the Subject Property "to get to their home and to leave it . . . ."[60] As discussed above, however, the Subject Property is encumbered mostly by the IBWC levee and

---

[56] Tex. Civ. Prac. & Rem. Code § 16.0265(b)(1).
[57] Dkt. No. 127 ¶¶ 14-15.
[58] *Id*.
[59] *See Tran*, 213 S.W.3d at 914 (determining that joint use of a driveway was not enough to support a claim of adverse possession "because 'possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant.'"); *see also Bywaters*, 686 S.W.2d at 595 (finding that a claim of ownership and claim that property was "maintained, clipped, preserved, watered and nurtured" was insufficient to establish exclusive adverse possession).
[60] Dkt. No. 127 ¶ 16.

Defendants have not shown how they have used, enjoyed, or cultivated the land other than stating they use it to access their homes. Their use of the levee as a driveway does not appear exclusive, and "[j]oint use is not enough" to establish adverse possession.[61] Again, their claims of ownership and use alone would not appear to be sufficient to support a claim of adverse possession.[62]

44. Regarding payment of property taxes on the Subject Property, Defendants acknowledge and Plaintiff agrees that no property taxes exist for the Subject Property.[63] This property was previously omitted by the Hidalgo County Appraisal District and did not exist in the appraisal district records until 2020,[64] when it was provided a Tax Identification Number for the first time.[65] Because the Subject Property was an omitted property, it was never taxed.[66] Accordingly, there is no way Defendants could have paid all property taxes on the Subject Property, as no property taxes existed prior to 2020.

### b. Inaction of Cotenant Heirs

45. Defendants next contend that the other cotenant heirs named in this action have failed to take any action to invalidate their claim of adverse possession under Subsection 16.0265(b)(2).[67]

46. As also discussed above, the adverse possessing cotenant heirs must additionally show that during the 10-year period preceding the filing of the affidavits required by Subsection (c), no cotenant heir has: (A) contributed to the property's taxes or maintenance; (B) challenged the exclusive possession of adverse possessing cotenant heirs; (C) asserted another claim against a possessing cotenant heir related to the property; (D) acted to preserve their interest in the property

---

[61] *Tran*, 213 S.W.3d at 914.
[62] *See Bywaters*, 686 S.W.2d at 595; *see also Tran*, 213 S.W.3d at 914 ("there must be adverse *possession*, not just adverse *beliefs*.").
[63] Dkt. No. 127 ¶ c).
[64] Ex. 10 – Hidalgo County Appraisal District Email.
[65] *See* Ex. 11 – Hidalgo CAD-Property Details. It is also not currently taxed as the United States is identified as the owner of the Subject Property.
[66] *See* Ex. 10, *supra* note 64.
[67] Dkt. No. 127 ¶ 19.

by filing notice of their interest in the deed records of the county where the property is located; or (E) entered into a written agreement with the possessing cotenant heir regarding possession of the property.[68]

47. Plaintiff agrees that no other cotenant heir has taken any of the above actions with regard to the Subject Property. As stated above, there have been no property taxes on the Subject Property, and therefore neither Defendants nor the other landowners in the action have contributed to the property taxes. Additionally, the Subject Property is encumbered mostly by the IBWC levee, which is maintained by the IBWC, not Defendants or the other landowners. Further, the other cotenant heirs in this action have not challenged any exclusive possession of the Subject Property because as discussed previously, Defendants do not appear to hold exclusive possession of the Subject Property and do not appear to have previously asserted a claim of exclusive possession. Lastly, no other cotenant heir has taken the actions described in Subsections (C) through (E), as it appears they and Defendants mistakenly believed the Subject Property was owned by Plaintiff following the transfer of the perpetual easement in 1937. Accordingly, the other landowners do not appear to have had any reason or basis to take any of the actions described in Subsections (C) through (E).

48. Defendants also point out that they are the only named landowners who have responded to Plaintiff's complaint in this condemnation action.[69] As indicated in Plaintiff's prior filings to the Court, however, Plaintiff has reached an agreement with the majority of landowners named in this action,[70] effectively preserving their interest in the Subject Property, and therefore those in

---

[68] Tex. Civ. Prac. & Rem. Code § 16.0265(b)(2).
[69] Dkt. No. 127 ¶ 21.
[70] At this time, the five Defendants and three other named landowners are the only individuals not in agreement with Plaintiff in this case.

agreement did not need to respond to Plaintiff's complaint.[71] Additionally, any of the named landowners could have disclaimed their interest in the Subject Property if they did not wish to assert an interest, but only one named landowner took that action.[72]

### D. *Five Years Following Claim of Adverse Possession*

49. Defendants lastly appear to assert that they meet Subsections (e) and (f) because no other named landowner has contested ownership or filed an answer in this case.[73] These subsections only arise once "a right of adverse possession is asserted by the filing of the affidavits required by Subsection (c)," however.[74] As Defendants have not met any of the requirements outlined in Subsection (c), including the filing of an affidavit of heirship and affidavit of adverse possession, Subsections (e) and (f) would appear to be irrelevant. Moreover, none of the other landowners appear to have had reason to contest ownership in this action as no claim of adverse possession has been asserted prior to the filing of Defendants' brief, and the other landowners did not need to file an answer because as stated above, the majority of the other landowners are in agreement with Plaintiff in this action.[75]

50. In sum, it does not appear that Section 16.0265 of the Texas Civil Practice & Remedies Code applies in this case as most, if not all, of the elements do not appear to be met to support Defendants' claim of adverse possession by cotenant heirs.

---

[71] *See* Fed. R. Civ. P. 71.1(e).
[72] *See* Dkt. No. 7.
[73] Dkt. No. 127 ¶ 29.
[74] Tex. Civ. Prac. & Rem. Code § 16.0265(e)-(f).
[75] *See* Fed. R. Civ. P. 71.1(e).

### E. *Plaintiff's Understanding of Title to the Subject Property*

51. All individuals currently named in this action claim an interest in the Subject Property. To facilitate successful negotiations regarding just compensation, Plaintiff must first know the proper parties to negotiate with and the share of ownership interest held by each individual.

52. It appears that after granting the perpetual easement over the 6.10 acre Subject Property to Hidalgo County, which subsequently conveyed the Subject Property to the United States, the heirs of Leonardo Jackson were under the mistaken belief that they had sold the 6.10 acre Subject Property in fee. Because of this mistaken belief, the Subject Property was not specifically accounted for in any later surveys, partitions, or conveyances.

53. An examination of the available title evidence does not appear to support Defendants' contention that they hold title to the Subject Property through adverse possession by cotenant heirs as it is a stringent statute with many elements, most of which do not appear to be met here.

54. It therefore appears that record title to the Subject Property was held by all of Leonardo Jackson's original heirs and W.E. Richey when the land was partitioned in 1952, and title subsequently passed to their heirs as each died, continuing to descend through the families by will or intestacy as heirs passed away. Accordingly, record title to the Subject Property appears to be currently held by the individuals named in this action as indicated in the attached Ownership List.[76]

### VI.   CONCLUSION

Plaintiff would show that it is appropriate for the Court to determine title and the ownership interests held by each of the owners in the Subject Property. Based on the foregoing, Plaintiff submits that absent additional contradictory evidence submitted by any defendant hereto, it would

---

[76] Ex. 12 - Ownership List. David Olvera has not been included in this list because although he had an interest in the Subject Property on the date of taking, he no longer has an interest as he has been dismissed from this action based on his fully executed disclaimer. *See* Dkt. No. 40. Accordingly, the interest he held is divided amongst his siblings as noted in Plaintiff's amicus brief.

be proper for this Court to determine title and the ownership interests in the Subject Property are held as indicated in the attached Ownership List. Accordingly, the United States requests that the Court determine the title owner of the Subject Property on the date of taking following consideration of the parties' briefs.

        Respectfully submitted,

        **RYAN K. PATRICK**
        United States Attorney
        Southern District of Texas

By:   *s/ Roland D. Ramos*
        **ROLAND D. RAMOS**
        Assistant United States Attorney
        Southern District of Texas No. 3458120
        Texas Bar No. 24096362
        1701 W. Bus. Highway 83, Suite 600
        McAllen, TX 78501
        Telephone:  (956) 618-8010
        Facsimile:  (956) 618-8016
        E-mail: Roland.Ramos@usdoj.gov
        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Roland D. Ramos, Assistant United States Attorney for the Southern District of Texas, hereby certify that on November 4, 2020, a copy of the foregoing was served on all parties in accordance with the Federal Rules of Civil Procedure.

By:   *s/ Roland D. Ramos*
        **ROLAND D. RAMOS**
        Assistant United States Attorney